**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JEREMIAH NEGRON, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

    Plaintiff,

    v.

GREAT DANE OPCO, LLC,
    d/b/a GREAT NORTHERN FOOD HALL, and
BRYAN FLODMAND,

    Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiff JEREMIAH NEGRON ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, GREAT DANE OPCO, LLC., d/b/a GREAT NORTHERN FOOD HALL ("Corporate Defendant"), and BRYAN FLODMAND ("Individual Defendant," and together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

1

(1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid spread of hours premium; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5. Plaintiff is a resident of Union County, New Jersey.

6. Defendants owned and operated a Restaurant (the "Restaurant"), which was located inside of Grand Central terminal. The Restaurant also included a bakery, bar, and a deli.

7. Corporate Defendant GREAT DANE OPCO, LLC d/b/a GREAT NORTHERN FOOD HALL was a foreign business corporation with an address for service of process located at THE LLC, 1360 Clifton Ave, PMB 405, Clifton, New Jersey 07012, and a principal place of business at 89 East 42nd Street, New York, New York 10017.

8. Individual Defendant BRYAN FLODMAND was the Chief Executive Officer of Corporate Defendant GREAT DANE OPCO, LLC d/b/a GREAT NORTHERN FOOD HALL. Defendant BRYAN FLODMAND exercised operational control as it related to all employees, including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant BRYAN FLODMAND

frequently visited the GREAT NORTHERN FOOD HALL. Defendant BRYAN FLODMAND exercised—and also delegated to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, employees of the GREAT NORTHERN FOOD HALL could complain to Defendant BRYAN FLODMAND directly regarding any of the terms of their employment, and Defendant BRYAN FLODMAND would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, terminating or hiring such employees, or designate others to effect any changes. Defendant BRYAN FLODMAND exercised functional control over the business and financial operations of Corporate Defendant. Defendant BRYAN FLODMAND had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and the Class.

9.  At all relevant times, Corporate Defendant was an "enterprise engaged in commerce" within the meaning of FLSA.

10. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the businesses operated by Defendants.

11. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

### **FLSA COLLECTIVE ACTION ALLEGATIONS**

12. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to team members, and misclassified supervisors, among others, employed by Defendants on or after

3

the date that is six (6) years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving; (ii) liquidated damages; and (iii) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

14. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 ALLEGATIONS – NEW YORK**

15. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, team members, and misclassified supervisors among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

16. All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes

of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

18. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages, including overtime, due to time shaving; (ii) unpaid spread of hours premium; (iii) failing to provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; and (iv) failing to provide proper wage statements per requirements of NYLL.

19. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

20. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who

are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a) Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

   b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

   c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

   d) Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime hours;

   e) Whether Defendants caused time shaving by not paying Plaintiff and Class Members for all actual hours worked, including for meal breaks that were not fully taken, and off-the-clock work before the beginning of each shift;

   f) Whether Defendants paid Plaintiff and Class Members the New York State "spread of hours" premium when their workdays exceeded ten (10) hours;

   g) Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

   h) Whether Defendants provided proper wage statements to employees as required under NYLL.

## STATEMENT OF FACTS

24. Plaintiff was employed by Defendants from in 2019 until in or around 2021. Plaintiff was initially hired as a team member at Defendants' Restaurant, located in Grand Central Terminal at 89 East 42nd Street, New York, New York 10017. One year into his employment, Plaintiff was "promoted" to the role of a supervisor, with no change in his duties or rate of pay.

25. At all times of his employment, Plaintiff's duties and responsibilities included making coffee, restocking supplies, assisting customers, setting up the pavilion, keeping after the cash register, etc. At no time was Plaintiff assigned with any managerial or supervisory duties. He could not hire or fire employees or set schedules.

26. Throughout his employment, Plaintiff's schedule varied every week. Some weeks, he would be assigned to work the morning shift which started at 6:00 a.m. to around 1:00 p.m., or the evening shift that started from 1:00 p.m. to closing of the Restaurant, at around 10:30 p.m. Once every week, Plaintiff would work a double shift, starting at 6:00 a.m. to or about 10:30 p.m. Therefore, Plaintiff regularly worked approximately fifty (50) to sixty (60) hours every week. FLSA Collective Plaintiffs and Class Members worked similar hours. At all times, Plaintiff was compensated weekly at the rate of fifteen dollars ($15) per hour.

27. Throughout his employment with Defendants, Plaintiff was time shaved and not compensated for all his hours worked. Plaintiff was subject to a thirty (30) minute meal break deduction two times every week. On such days, Plaintiff could not take full meal breaks as Defendants required Plaintiff to perform work while he was supposed to be on break. Despite not taking his full breaks, Plaintiff was deducted thirty (30) minutes from his wages approximately two times a week, amounting to one (1) hour of unpaid wages per week. FLSA Collective Plaintiffs, and Class Members also suffered similarly from Defendants' illegal time shaving policy

because they were not paid for all hours worked, including for meal breaks that were not fully taken.

28. In addition, Plaintiff was required to arrive at work ten (10) to fifteen (15) minutes before his scheduled shift and start working, but was not permitted to clock in until the start of his shift. Accordingly, Plaintiff worked off-the-clock for approximately one and a half (1.5) hours every week.

29. Due to Plaintiff's off-the-clock-work and improper meal break deductions, Plaintiff was time shaved a total of two and a half (2.5) hours every week.

30. Plaintiff and Class Members regularly worked days that exceeded ten (10) hours in length, but Defendants failed to pay Plaintiff and Class Members the spread of hours premium for workdays that exceeded ten (10) hours in length, violation of the NYLL.

31. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek due to time shaving, in violation of the FLSA and NYLL.

32. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class Members as required under the NYLL.

33. Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

34. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

35. Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

36. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> "Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights."

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

37. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

38. Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

39. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

40. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

41. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

42. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. See *McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

43.  "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

44.  Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

45.  Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> "The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA

13

taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income."

*Coward v. Zurich Am. Ins. Co.*, No. 10 C 6695, 2011 U.S. Dist. LEXIS 74543 (N.D. Ill. July 8, 2011) at *3-4.

46. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

47. Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

48. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

"The practical difficulty is that eligibility for Social Security benefits presumptively

14

depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income."

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

49. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

50. Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiff and Class Members as required under the NYLL, as the wage statements did not accurately reflect the number of hours worked by employees.

51. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

52. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

53. At all relevant times, Defendants were employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiff within the meaning of FLSA.

55. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

56. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate to for their hours worked over forty (40) hours a week due to time shaving.

57. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including for overtime, when Defendants knew or should have known such was due.

59. Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

60. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

61. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

62. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

63. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

64. Defendants violated Plaintiff's and Class Members' rights by failing to pay overtime wages for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to time shaving, in violation of the NYLL.

65. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

66. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with wage notice, at date of hiring and annually thereafter, as required under the NYLL.

67.  Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements as required under the NYLL. Defendants provided fraudulent wage statements that failed to accurately reflect the number of hours worked and the proper compensation for Plaintiff and Class Members.

68.  Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants, unpaid wages, including overtime, due to time shaving; unpaid spread of hours premiums; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to Defendants' time shaving policy due under the FLSA and NYLL;

d. An award of unpaid "spread of hours" premium due under the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty (40) per workweek, pursuant to the FLSA;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty (40) per workweek, pursuant to the NYLL;

h.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

i.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 23, 2024                    Respectfully submitted,
New York, New York                         **LEE LITIGATION GROUP, PLLC**

                                    By:    _/s/ C.K. Lee_
                                           C.K. Lee (CL 4086)
                                           Anne Seelig (AS 3976)
                                           148 West 24th Street, 8th Floor
                                           New York, NY 10011
                                           Tel.: (212) 465-1188
                                           Fax: (212) 465-1181
                                           *Attorneys for Plaintiff,*
                                           *FLSA Collective Plaintiffs, and the Class*